IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEMETRIUS J. BROWN, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 21-1735 |
| | : | |
| v. | : | |
| | : | |
| RESOURCES FOR HUMAN | : | |
| DEVELOPMENT, KAILO HAVEN | : | |
| SHELTER, JAMES MCPHAIL, TAHIR | : | |
| HIGHTOWER, ANGELICA LEE, and | : | |
| CITY OF PHILADELPHIA, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                          June 11, 2021

The *pro se* plaintiff has sought leave to proceed *in forma pauperis* in this action where he claims that a non-profit organization, the non-profit's shelter and program, and three of the shelter's employees, violated his rights under 42 U.S.C. § 1983 and committed torts under Pennsylvania state law. More specifically, he alleges that, on multiple occasions, a male employee drugged his drink and a female employee took advantage of him in his impaired state by sexually assaulting him. He claims that soon after confronting the male employee about these actions, a supervisor informed him that he had to leave the program.

As discussed below, the court will grant the plaintiff leave to proceed *in forma pauperis* because it appears that he is unable to afford to pre-pay the filing fee. The court will dismiss the complaint to the extent that the plaintiff has attempted to assert claims under section 1983 because there are no allegations remotely suggesting that the non-profit, its program, or the employees acted under color of state law. In addition, although the plaintiff names the City of Philadelphia as a defendant in the caption, he does not identify it as a defendant in the body of the complaint and

does not include any allegations possibly tying the City to any of his claims. Further, to the extent that the plaintiff is asserting any state-law claims, the court declines to exercise supplemental jurisdiction over those claims and there is no independent basis for the court to exercise jurisdiction over them. Accordingly, the court will dismiss the complaint.

## I.    ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Demetrius J. Brown ("Brown"), commenced this action by filing an application for leave to proceed *in forma pauperis* (the "IFP Application") and a complaint, which the clerk of court docketed on April 12, 2021. *See* Doc. Nos. 1, 2. In the caption of the complaint, Brown names the following defendants: (1) Resources for Human Development ("RHD"); (2) Kailo Haven Shelter ("KHS"); (3) James McPhail ("McPhail"), the director at KHS; (4) Tahir Hightower ("Hightower"), a KHS employee; (5) Angelica Lee ("Lee"), a KHS employee; and (6) the City of Philadelphia.[1] *See* Compl. at ECF pp. 1–2, Doc. No. 2.

As for the allegations in the complaint, Brown alleges that he was residing at KHS in Philadelphia, Pennsylvania, in March and April 2021.[2] *Id.* at ECF p. 3. On one occasion in March, Hightower took Brown outside to "talk," and then he proceeded to give Brown an alcoholic drink that contained ecstasy. *Id.* at ECF p. 3. Brown and Hightower then smoked until Hightower told Brown to go inside. *Id.*

---

[1] As explained further below, Brown does not identify the City of Philadelphia as a defendant in the body of the complaint.

[2] KHS "is an entry-level program (Safe Haven) for homeless persons who are dealing with issues of mental illness and/or substance abuse." *See* https://rhd.org/program/kailo-haven/ (last visited June 9, 2021). KHS is a program offered by RHD. *Id.* RHD

> is a national human services nonprofit with the broadest possible service mission, and specializes in creating innovative, quality services that support people of all abilities wherever the need exists. . . . RHD supports more than 160 human services programs across the country, serving tens of thousands of people every year with caring and effective programs addressing intellectual and developmental disabilities, behavioral health, homelessness, addiction recovery and more.

*See* https://www.rhd.org/about-rhd/ (last visited June 9, 2021).

Upon going inside, Brown began to feel different due to the ecstasy. *Id.* Lee noticed that Brown was acting differently and called him into a stairway. *Id.* While there, she commented to Brown that she was sexually aroused. *Id.* Brown then claims that Lee "grabbed [his] hand and stuck it in her pants and placed [his hand] on her vagina." *Id.* Afterwards, Lee told him "not to speak to no one about it and left the stairway." *Id.*

Brown asserts that Hightower and Lee orchestrated this plan to drug him and engage in sexual acts with him whenever they both worked the 11 p.m. to 7 a.m. shift at KHS. *Id.* Brown describes how the sexual acts escalated over time. *Id.* at ECF pp. 3–4. In this regard, Brown recounts multiple instances of these sexual encounters between him and Lee in substantial detail, all of which were preceded by Hightower allegedly giving Brown a drink with drugs in it. *Id.* at ECF pp. 3–4. Toward the end of March, Hightower even started recording him having sexual intercourse with Lee. *Id.* at ECF p. 4.

According to Brown, once Hightower started recording these sexual encounters, Brown informed him that he did not want Hightower recording him and that he was going to speak to the director, McPhail, about "everything." *Id.* They argued about Brown planning to report what Hightower and Lee were doing to him. *Id.* Shortly thereafter, a supervisor approached Brown and informed him that he was being discharged from KHS for incidents of sexual harassment. *Id.* Brown asserts that he explained to the supervisor that he was the victim in this situation, and ultimately, he had a meeting with McPhail about these incidents. *Id.* Although Hightower and Lee were fired, McPhail told Brown that he "was still wrong" and discharged Brown from KHS. *Id.*

Based on these allegations, Brown claims injuries in the nature of "mental health trauma, homelessness, a lack of trust[ in] care providers, defamation of character, [and] violation of [his] personal body." *Id.* at ECF p. 5. As a result, Brown seeks $100,000 in compensation for "being

sexually abused by staff members" at KHS and for the court to "award" him with residency in a

"homeless mental health facility." *Id.*

## II.    DISCUSSION

### A.    The IFP Application

Regarding applications for leave to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States,* 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote

omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable

to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir.

1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the

litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this

Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must]

review the affiant's financial statement, and, if convinced that he or she is unable to pay the court

costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at
1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, it appears that Brown is unable to pay the costs
of suit. Therefore, the court will grant him leave to proceed *in forma pauperis*.

**B.      Standard of Review – Screening Under 28 U.S.C. § 1915(e)**

Because the court has granted Brown leave to proceed *in forma pauperis*, the court must
engage in the second part of the two-part analysis and examine whether the complaint is frivolous,
malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a
defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that
"[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall
dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is
frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks
monetary relief against a defendant who is immune from such relief"). A complaint is frivolous
under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490
U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory."
*Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the
> definition of the term "malicious," engage in a subjective inquiry into the litigant's
> motivations at the time of the filing of the lawsuit to determine whether the action
> is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the
judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*,
Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a
complaint for failure to state a claim pursuant to this subsection is identical to the legal standard

used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted). In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Higgs v. Attorney Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).

### C.    Analysis

Although Brown does not cite to a specific statute or assert a legal claim—other than his passing reference to "defamation of character"—the court has construed the complaint as possibly asserting claims for violations of his civil rights under 42 U.S.C. § 1983 and state-law tort claims, such as a claim for defamation. The court addresses each of these possible claims in turn.

### 1.    Claims Under Section 1983

Section 1983 provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color

of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

In this case, Brown has not alleged a plausible claim for violation of his constitutional rights under section 1983 because there are no plausible allegations that RHD, KHS, McPhail, Hightower, or Lee were acting under color of state law. In this regard,

> [t]he color-of-state-law requirement is a threshold issue; "there is no liability under § 1983 for those not acting under color of law." *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir.1995). To show that the defendant acted under color of state law, a litigant must establish that the defendant is a "state actor" under the Fourteenth Amendment. *Benn v. Universal Health System, Inc.*, 371 F.3d 165, 169 n. 1 (3d Cir.2004).

*Bailey v. Harleysville Nat'l Bank & Trust*, 188 F. App'x 66, 67 (3d Cir. 2006) (per curiam).

The "touchstone" of the state-action inquiry centers on the proposition that "state action may be found if, though only if, there is such a close nexus between the [s]tate and the challenged action that seemingly private behavior may be fairly treated as that of the [s]tate itself." *P.R.B.A. Corp. v. HMS Host Toll Rds., Inc.*, 808 F.3d 221, 224 (3d Cir. 2015) (internal quotation marks and citations omitted). The Third Circuit has

> outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists:
>
> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotation marks and citation omitted).

Neither RHD, KHS, McPhail, Hightower, nor Lee appear to be state actors under any of the aforementioned tests and Brown does not allege that they had any connection to the state. Instead, Brown's allegations, even when liberally construed, suggest that they are a privately run nonprofit organization, an entity run by the nonprofit organization, and privately employed individuals. Moreover, none of Brown's allegations support the notion that the conduct of these defendants constitutes state action under section 1983.[3]

Several district courts analyzing section 1983 claims against defendants such as RHD, KHS, McPhail, Hightower, and Lee, have found that privately run social services entities, such as a homeless shelter, or its operator, directors, and employees, are not considered state actors. *See, e.g.*, *Witt v. Johnson*, Civ. A. No. 21-11, 2021 WL 1321316, at *1–2 (W.D. Va. Apr. 8, 2021) (concluding that plaintiff's section 1983 claims against The Haven and two of its employees— where employees denied plaintiff access to day shelter for homeless individuals and physically assaulted him—could not proceed because defendants were private nonprofit organization and its employees, not state actors); *Al-Qadaffi v. Acacia Network*, Civ. A. No. 16-CV-5423 (BMC)(RLM), 2016 WL 6072374, at *3 (E.D.N.Y. Oct. 17, 2016) (dismissing plaintiff's section 1983 claims where there was "no indication that the [men's] shelter, its operator, or its director [were] state actors or that they otherwise acted 'under color of state law' when they caused the

---

[3] The court recognizes that the caption of the complaint lists the City of Philadelphia as a defendant in this matter. Nonetheless, Brown did not separately identify the City as a defendant in his list of defendants in the body of the complaint, *see* Compl. at ECF p. 2, and Brown has not included any specific allegations against the City in the complaint. In addition, Brown does not allege any connection between the other named defendants and the City, or a connection between him and the City (other than that KHS is located in the City). Moreover, Brown does not set forth any factual allegations suggesting that the City was involved in the events referenced in the complaint. Further, although a municipality may be sued under section 1983, *see Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978) ("We conclude . . . that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edits or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."), there is no basis for such a claim alleged here and, as such, the court will dismiss the City as a defendant in this matter.

alleged harm" by allegedly failing to provide halal meals); *Hill v. Nolan*, Civ. A. No. 1:15-cv-648, 2015 WL 9286757, at *2 (S.D. Ohio Oct. 8, 2015) (recommending dismissal of complaint against homeless shelter and several employees that had required plaintiff to leave facility and stay elsewhere when "there [were] no facts whatsoever alleged in Plaintiff's complaint" that would indicate shelter was acting under color of state law, particularly where single, private individual founded shelter, state of Ohio did not operate shelter, and shelter was not state agency), *report and recommendation adopted*, 2015 WL 9269756 (S.D. Ohio Dec. 21, 2015).

Here, Brown has not alleged sufficient facts establishing that RHD, KHS, McPhail, Hightower, or Lee are state actors. Thus, Brown has not alleged sufficient facts to state a plausible claim of state action on the part of these defendants. Accordingly, the court will dismiss Brown's claims pursuant to section 1915(e)(2)(B)(ii) for the failure to state a claim.

### 2.      State-Law Claims

Liberally construing the complaint, it is also possible that Brown is attempting to bring tort claims under Pennsylvania state law relating to the incidents at KHS. Having dismissed Brown's federal claims, the court will not exercise supplemental jurisdiction over any state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if-- . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ."). As the Supreme Court instructs:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966). Here, the court finds no basis to retain supplemental jurisdiction of any state-law claims.

Additionally, there is no independent basis for subject-matter jurisdiction over any state-law claims. The only possible basis is under the diversity jurisdiction statute, 28 U.S.C. § 1332, which grants a district court subject-matter jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). "The burden of establishing federal jurisdiction rests with the party asserting its existence." *Id.* at 105 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

For purposes of determining whether parties are completely diverse, an individual is a citizen of the state where the individual is domiciled, meaning the state where the individual is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011) ("[D]omicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely." (citation omitted)). "A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business. . . . And a partnership, as an unincorporated entity, takes on the citizenship of each of its partners." *Zambelli*, 592 F.3d at 419 (citations omitted).

Here, Brown affirmatively alleges that he is a citizen of the Commonwealth of Pennsylvania. *See* Compl. at ECF p. 3. He also alleges that the defendants are citizens of Pennsylvania. *See id.* Therefore, the parties are not completely diverse for purposes of establishing this court's jurisdiction over any state-law claims Brown intends to pursue. Accordingly, the court will dismiss any state law claims for lack of subject-matter jurisdiction without prejudice to Brown's right to assert these claims in the appropriate state court.

### III.    CONCLUSION

For the foregoing reasons, the court will dismiss Brown's federal claims for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and his state law claims for lack of subject-matter jurisdiction. The court will not provide Brown with an opportunity to amend his federal claims because amendment would be futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (indicating that district court should generally provide *pro se* plaintiff with leave to amend unless amending would be inequitable or futile); *see also Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) (explaining that "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile"). Accordingly, the court will dismiss Brown's federal claims with prejudice and his state-law claims without prejudice to his right to assert the state-law claims in the appropriate state court.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.